**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

| | |
|---|---|
| In re:<br><br>ARLYNN S. HENDERSON, SR.,<br>ANN M. HENDERSON,<br><br>Debtors | Chapter 13<br>Case No. 08-30684-HJB |

**MEMORANDUM OF DECISION**

Before the Court for final determination are the "Objection to Proof of Claim" ("Objection to Claim") of Dave's Truck Repair, Inc. ("DTR") filed by Arlynn S. Henderson, Jr. (the "Debtor") and the "Objection to Confirmation of Chapter 13 Plan" ("Objection to Plan") filed by DTR. Both objections turn on the allowability of DTR's claim against the Debtor (the "Claim"), either as a secured or unsecured claim. In support of its Claim, DTR has filed an accounting (the "Accounting") for the reasons described below. That Accounting includes DTR's attorney's fees. The narrow issue remaining before the Court is whether DTR's attorney's fees, incurred while litigating issues in this Court to prove its statutory repairman's lien on the Debtor's vehicle, may properly be included in its secured claim under § 506(b) of the Bankruptcy Code[1] or is otherwise allowable as an unsecured claim under § 502(b) of the Bankruptcy Code.

---

[1] All references to the "Bankruptcy Code" are to Title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, title III, § 302, 119 Stat. 23 (2005), 11 U.S.C. §§ 101, et seq.

I.   FACTS AND TRAVEL OF THE CASE

After trial on the Debtor's "Motion for Sanctions Against [DTR] and/or David Proulx Personally," the Debtor's Objection to Claim, and DTR's Objection to Plan," the Court issued findings of fact and rulings of law in open court. As it provides a useful background for framing the single remaining issue, that ruling is reproduced here in full:

> Before me is (1) a motion by the Debtor Arlynn Henderson against Dave's Truck Repair and David Proulx for violation of the automatic stay under 11 U.S.C. § 362(a) on account of the failure of Dave's Truck Repair to turn over a certain vehicle with respect to which the Debtor is the lessee; (2) an objection of Dave's Truck Repair to confirmation of the Debtor's chapter 13 plan for failure to list the claim of Dave's Truck Repair; and (3) the Debtor's objection to the claim filed by Dave's Truck Repair. The basic disputes underlying each of these matters are whether Dave's Truck Repair was entitled to exercise its right to take possession of a certain 2004 P500 Workhorse, while amounts due for the repair of that vehicle and others were outstanding, and the amount of Dave's Truck Repair's rightful claim.
>
> With respect to the motion for sanctions, the Debtor has the burden of production and the burden of persuasion. With respect to the objection to claim, the Debtor has the burden of production, but the claimant has the burden of persuasion. The disposition of the objection to confirmation naturally follows from the first two.
>
> The following constitute my findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, as made applicable to these contested matters under Rule 9014.
>
> Mr. Henderson is an independent contractor for Federal Express Home Delivery. As such, he leases a number of vehicles, three of which support the Federal Express brand and are manufactured by Workhorse. Dave's Truck Repair is a Workhorse authorized dealer. Approximately two

to three years ago Mr. Henderson began bringing his Workhorse vehicles to Dave's Truck Repair for routine maintenance as well as warranty work.

After a time, Mr. Henderson began to fall behind on his obligations to Dave's Truck Repair, at one time even presenting a check which failed twice to clear. In February of 2008, Mr. Henderson brought in a particular 2004 P500 Workhorse vehicle for what he believed was primarily warranty work. Some or all of the charges were not covered by the existing warranty, and the amount due for the work amounted to approximately $1,120. However, when Mr. Henderson tried to pick up the vehicle, he was told that it would not be released until he paid the balance of his outstanding account of approximately $9,000. Mr. Henderson subsequently met both with David Proulx, the owner, and Ronald Proulx, serving as bookkeeper and accounts manager, and was told both that interest was accruing on his obligation and that Dave's Truck Repair had subsequently instituted a $100 per day storage charge, but that if he could pay the $9,000 balance by the end of that particular month, the interest and storage charges would be waived.

Ultimately, Mr. Henderson was not able to raise $9,000 during that period. He first paid the sum of $7,500 without securing an agreement from Dave's Truck Repair as to the allocation of the outstanding debt, and then paid the additional sum of $250, but Dave's Truck Repair refused to release the vehicle.

Mr. Henderson and his wife subsequently filed a Chapter 13 case in this Court on May 6, 2008, and Mr. Henderson again demanded the vehicle from Dave's Truck Repair. Dave's Truck Repair refused on the grounds that retention of the vehicle was necessary for retention of its mechanics lien under state law. In fact, state law does provide for such a lien in Massachusetts General Laws, ch. 255, §25.

Mr. Henderson essentially makes three arguments. First, he contends that the $7,750 he paid should have been allocated first to the invoice for repairs to the 2004 P500 Workhorse vehicle, and that after that credit, Dave's

3

Truck Repair was not entitled to retain the vehicle. Therefore, at least after the filing of the Chapter 13 case, Dave's Truck Repair violated the automatic stay. Second, Mr. Henderson challenges the lien set forth on the invoices because he says that he never signed the invoices. Third, he challenges the Dave's Truck Repair Claim, arguing that he is not liable for the prepetition interest charge on the balance due or the storage charges, because they were instituted after he brought the vehicle in for repair. And he also says that the invoices are unreliable as they are rife with errors.

      Mr. Henderson is not correct with respect to the allocation question. Under Massachusetts law, where there are several outstanding debts, the Debtor has the primary power to direct the application of payment, but if the Debtor fails to exercise this right before or at the time of payment, the creditor is free to appropriate that money to any of the debtor's debts as the creditor chooses and without concern for the debtor's interest. . . . [See In re Bartlett, 367 B.R. 21, 26-27]. Because I find that Mr. Henderson did not specifically direct the $7,500 payment or the subsequent $250 payment to be allocated first to the invoice for the repair of the vehicle then being held by Dave's Truck Repair, I must rule that Dave's Truck Repair was free to allocate the payment to the oldest obligations of the Debtor, none of which included the instant vehicle. And because the invoices for that vehicle, the vehicle now held by Dave's Truck Repair, remained unpaid, Dave's Truck Repair was entitled to retain the vehicle to satisfy the remaining repair obligation under Massachusetts law.

      Nothing changed after the filing of the Chapter 13 case. Dave's Truck Repair took no further action to liquidate its collateral. And the mere holding of what it seized before the filing of the petition was not, without more, a violation of the automatic stay. Indeed, the Debtor has since demanded turnover, but he has done so claiming a right to do so and has not offered adequate protection for Dave's Truck Repair's lien to secure the sums due for the repair of the vehicle. Accordingly, there was no violation of the

4

automatic stay, and the Debtor's motion for sanctions is accordingly denied.

Similarly, the Debtor's argument that Dave's Truck Repair has no lien, because he never signed the invoices in which the lien was claimed, has no merit. First, he had received those invoices from Dave's Truck Repair over time on several different occasions and was aware that Dave's Truck Repair claimed a lien stated on the invoices, regardless of whether Dave's Truck Repair had ever taken steps before in connection with the other vehicles to enforce it or compelled the Debtor to actually sign the invoices. Second, and equally as important, Dave's Truck Repair had a statutory right to claim such a lien under Massachusetts General Laws chapter 255, § 25, regardless of whether the lien was set forth on its invoices.

With respect to the Debtor's claim that the Dave's Truck Repair Claim was overstated because of errors made on the invoices, the testimony with respect to the materiality of errors on the invoices was unconvincing. Only one was actually identified in testimony – the model year of the vehicle on one of the invoices – and that error was harmless. However, the Debtor's contest of those components of the claim respecting the interest and storage charges has considerably more merit and more gravity. The possibility of a claim for interest and storage charges were not set forth on the invoices and were not introduced by Dave's Truck Repair until well after the vehicle was brought to Dave's Truck Repair for work. There was no evidence that the Debtor ever expressly or impliedly agreed to them. Nor did Dave's Truck Repair produce any evidence the sum of $100 per day for storage or, in fact, any amount constituted incidental or consequential damages of any breach by the Debtor of his obligation to pay for the repair of the vehicle. It appears to have been made out of thin air as an additional incentive for timely payment by the Debtor. Accordingly, the interest and storage charges must be stripped out of the balance claimed by Dave's Truck Repair.

To suggest that the testimony about the real remaining claim of Dave's Truck Repair was obscure is an understatement, the running balance being

greatly impacted by the claims for interest and those storage charges. Accordingly, Dave's Truck Repair is ordered to provide, within 30 days of the entry of this order, a detailed accounting of charges made to and payments received from the Debtor in support of its Claim, reduced by the interest and storage charges. The Debtor is ordered, within 15 days thereafter, to identify with specificity any dispute with respect to that accounting. If the Court can liquidate the Claim based on those papers, it will do so, allow the Claim in that amount, and order the Debtors to amend their plan within a reasonable period thereafter. If the Court cannot liquidate the amount due, testimony will be reopened on such terms as the Court may then determine.

. . .

Hearing, December 5, 2008.

DTR subsequently filed the Accounting, in which it asserts an outstanding amount due for repairs of $2,206.53. That sum is no longer in dispute. The Accounting sets forth, however, an additional amount of $9,787 in attorney's fees. The Debtor objects to the inclusion of attorney's fees in the Claim. Because the factual issues are now undisputed, the Court allowed the parties additional time to file memoranda of law in support of their opposing positions and thereafter took the matter under advisement.

II.  POSITIONS OF THE PARTIES

Section 506(b) of the Bankruptcy Code, as recently amended, allows an oversecured creditor[2] to include, as part of its secured claim, "reasonable fees, costs or charges provided for under the . . . State statute under which the claim arose." 11 U.S.C. § 506(b). Relying on this Code provision and Massachusetts General Laws ("M.G.L.")

---

[2] The parties agree that the Claim is oversecured.

ch. 255, §§ 25 and 29, DTR argues that its attorney's fees are properly included in its secured Claim. Because DTR holds a repairman's lien under M.G.L. ch. 255, § 25,[3] it says that it is entitled, under Massachusetts law, to attorney's fees provided for in M.G.L. ch. 255, § 29. DTR maintains that "its entire involvement in this Bankruptcy proceeding has been to defend its rights as a valid lien holder," and its attorney's fees are therefore "reasonable," under § 506(b).

The Debtor does not contest DTR's assertion that the attorney's fees are provided for under Massachusetts law, but argues that the Court has discretion to deem those fees unreasonable under § 506(b). According to the Debtor, although he was unsuccessful in proving that DTR violated the automatic stay, he was nevertheless successful on his objection to the DTR Claim, resulting in a reduction of the Claim from $7,120.92 to $2,206.32. The Debtor characterizes the litigation as a "successful[ ] challeng[e to] an over-inflated proof of claim." As such, the Debtor says, "[i]t would be inequitable to allow DTR to file an erroneous proof of claim, and then force the Debtor to pay its legal fees when the proof of claim is justifiably opposed."

III. DISCUSSION

> [U]nder amended § 506(b), there are [ ] four elements a creditor must meet in order to recover its attorneys' fees. A creditor is entitled to attorneys' fees if (1) its claim is an allowed secured claim; (2) it is an oversecured creditor; (3) the fees it asserts are reasonable; and (4) *the fees are provided for under an agreement under which such claim arose, or the fees are provided for*

---

[3] Although the Court referred to DTR's "mechanics" lien in its oral ruling, the term "repairman's lien" is more appropriate under Massachusetts Law. See M.G.L. ch. 255, § 25 ("Lien of Garage Keepers and Repairmen").

7

*under a State statute under which the creditor's claim arose."*[4]

In re Astle, 364 B.R. 735, 741 (Bankr. D. Idaho 2007) (emphasis added).[5]

The parties agree that the first two elements have been satisfied and focus their arguments on the third element – reasonableness. But proceeding immediately to determine whether the attorney's fees are reasonable puts the proverbial cart before the [Work]horse. Before the Court examines the fees for reasonableness, it must first determine that the fees are actually "provided for under the State statute" under which DTR's repairman's lien arose.

The Court has previously determined that DTR holds a secured repairman's lien under M.G.L. ch. 255, § 25 ("§ 25" or "Section 25"), which provides:

> . . . [P]ersons engaged in performing work upon or in connection with the inspection, reconditioning and repairing of motor vehicles shall have a lien upon such motor vehicles for proper charges due them for the *storage, work and care of the same.*

M.G.L. ch. 255, § 25 (emphasis added). A repairman with a lien on a vehicle has two options: (1) the lienholder can bring suit against the owner for a sale of the vehicle to satisfy

---

[4] Specifically, § 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) [trustee's costs and expenses] of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

[5] See also, Campbell v. Buckley (In re Campbell), 402 B.R. 453, 461 (Bankr. D. Mass. 2009) (citing, quoting Holland v. EMC Mortgage Corp. (In re Holland), 374 B.R. 409, 429 (Bankr. D. Mass. 2007)); Eastman National Bank v. Sun'N Fun Waterpark LLC (In re Sun 'N Fun Waterpark LLC), 408 B.R. 361, 366 (B.A.P. 10th Cir. 2009).

the lien, see M.G.L. ch. 255, § 26;[6] or (2) the lienholder can retain the vehicle, see M.G.L. ch. 255, § 31,[7] until the owner dissolves the lien by posting bond or paying the amount due, see Gilman v. Zirkin, 164 N.E.2d 373, 374, 265 Mass. 372 (1928) (lien may be discharged by valid tender of amount due, or by posting bond under M.G.L. ch. 255, §§ 33, 34).

If the lienholder chooses the first course and successfully sues for a sale of the vehicle to satisfy the lien, attorney's fees may be recovered from the proceeds of that sale. This process is provided for by M.G.L. ch. 255, § 29 ("§ 29" or "Section 29"), which provides:

> If, upon a default or a trial it is found that a lien exists upon the property *and that the property ought to be sold for the satisfaction fo the debt*, the court may make an order for such sale, determine and record the amount then due and *award costs to the prevailing party*. Any proceeds of the sale remaining *after satisfying the debt, costs and charges*, shall be paid to the owner upon demand.

M.G.L. ch. 255, § 29 (emphasis added).

But DTR did not proceed under §26 as contemplated by § 29; it did not bring suit to sell the vehicle in satisfaction of its repairman's lien. Instead, DTR chose the second course of action allowed by Massachusetts law, retaining the vehicle and awaiting payment of the outstanding amount due for repairs. DTR's attorneys fees were not incurred in seeking court action to sell the vehicle, but in defending its lien in this court. Therefore,

---

[6] "A person who has a lien, . . . for money due to him on account of work and labor, storage, care and diligence, . . . if such money is not paid, in the case of a lien described in . . . [§ 25] . . . within ten days, after a demand in writing delivered to the debtor . . ., may bring a civil action in the superior court or in a district court . . . to have the property sold to satisfy the debt." M.G.L. ch. 255, § 26.

[7] "Sections twenty-four to twenty-nine, inclusive, shall not restrict the right of a person who has a lien upon property to hold or dispose of it in any other lawful manner." M.G.L. ch. 255, § 31.

9

under a plain reading of the Massachusetts statute, § 29 does not apply and cannot be the basis for inclusion of the attorney's fees in DTR Claim.

Nor does the Court find that § 25 includes, as part of a repairman's lien, a lienholder's attorney's fees incurred in connection with merely preserving its lien. The Massachusetts Supreme Judicial Court (the "SJC") has held that a repairman's lien under § 25 covers *only* the charges specified in the statute. See North End Auto Park, Inc. v. Petringa Trucking Co., Inc., 150 N.E.2d 735, 738 (Mass. 1958). In that case, emphasizing that the repairman's lien for storage and care of a vehicle was created by statute and did not exist at common law, id. at 737, the SJC strictly interpreted § 25. Applying the plain statutory language, the court held that the lien covering "storage and care" of vehicles did not extend to include charges for gasoline and oil, as those items could not be classified as "care" of the vehicle under the statute. Id.[8]

And the SJC has declined to include attorneys' fees as part of other statutory liens where the statute creating the lien does not expressly provide. In National Lumber Co. v. United Casualty and Surety Ins. Co., Inc., the SJC determined that a mechanic's lien recorded under M.G.L. ch. 254, § 4 did not "include[ ] contractual interest and reasonable attorney's fees incurred in enforcing the lien." 802 N.E.2d 82, 84 (Mass. 2004). Stating that "[a] mechanic's lien is a statutory creation, and can be enforced only by strict

---

[8] The North End Auto court had before it an earlier version of § 25, which provided for a repairman's lien "for the storage and care" of a vehicle. North End Auto, 150 N.E.2d at 736-37. The Court declined to determine whether the statute's inclusion of "care" included charges incident to repair of the vehicle, finding that at least a common law garage keeper's lien for repairs (including labor and materials) extended to that portion of the charges. Id. at 738. The current version of § 25, however, includes "storage, *work* and care," bringing charges for repair of a vehicle within the purview of the statute.

compliance with the statute," the court held that the statute governing the creation of the lien "is strictly construed against the party claiming the lien." Id at 85-86 (citations omitted). Looking at the "plain wording" of the statute, which limited the lien to "labor and material," the SJC concluded that the omission of any reference to interest or attorney's fees in that provision meant those charges were not included in the lien. Id. at 86. The Court specifically noted that although M.G.L. ch. 254, § 21 allowed an award of such costs following a court-ordered sale, that section was not relevant. Id. at 86. The lienholders were not pursuing a sale of the property to recover on their lien, but were contesting the amount of the bond posted by the property owner to dissolve the lien. Id. at 85. Because the property owner was not required to include the asserted attorney's fees in its bond, the SJC concluded that the lien was properly dissolved. Id. at 87-88.[9]

Similarly, here, § 25 includes as part of a repairman's lien amounts due for "storage, work and care" of a vehicle. M.G.L. ch. 255, § 25. The Court previously determined that DTR was not entitled to storage charges. All that is left then, is the remaining amount of $2,206.53 owed for repairs. The statute does not include, as part of the lien, any charges for attorneys' fees incurred in connection with proving the validity of the lien. And § 29 is inapplicable here. Accordingly, the "State statute under which [DTR's] claim arose" does not "provide[ ] for" the recovery of attorneys' fees, and those fees may not be included in

---

[9] Compare Trustee of the Iron Workers Dist. Council of New England, Pension, Health & Welfare, Annuity, Vacation, Educ. Funds & Other Funds v. Oxford Sutton Dev., LLC, 24 Mass. L. Rep. 421 (Mass. Super. 2008) (noting that, unlike the mechanic's lien statute discussed in National Lumber, the statute at issue allowed workers to file a lien securing payment for work actually performed "*including interest and agreed penalties for failure to pay the same.*" Since the underlying contract provided for attorney fees, the lien could also include attorney fees, but only because the statute specifically provided for their inclusion).

11

DTR's secured claim.  11 U.S.C. § 506(b).

Having found that DTR is precluded from including its attorney's fees as part of its secured Claim under § 506(b), the Court must still ask whether the fees are allowable as an *unsecured* claim pursuant to § 502 of the Bankruptcy Code.[10]  See In re Tricca, 196 B.R. 214, 220 (Bankr. D. Mass. 1996) ("while § 506(b) [may] preclude[ ] a claim from assuming secured status, it is still necessary to examine 11 U.S.C. §§ 101(5) and 502(b) to determine whether [a] claim for legal fees and costs may be allowable . . . .").[11]  Again, the Court looks to Massachusetts law to determine DTR's entitlement to attorney's fees as an unsecured claim.  See Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co., 549 U.S. 443, 450 (2007).

DTR has asserted a right to attorney's fees only under M.G.L. ch. 255, § 29, which the Court has found to be inapplicable here.  Thus, having failed to demonstrate entitlement to attorney's fees under a "statute . . . [or] 'enforceable contract,'" id. at 448 (quoting Fleishmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717 (1967)), the "default

---

[10] Section 502(b) provides, in relevant part:

(b) [If an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--

> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 506(b).

[11] See also UPS Capital Bus. Credit. v. Gencarelli (IN re Gencarelli), 501 F.3d 1, 6 (1st Cir. 2007) ("section 502 controls the overall question of whether an oversecured creditor's bargained-for right to fees will be allowed or disallowed") (citing Welzel v. Advocate Realty Invs., LLC (In re Welzel), 275 F.3d 1308, 1318 (11th Cir. 2001); Cambell v. Buckley (In re Campbell), 402 B.R. 453, 461 (Bankr. D. Mass. 2009)  (even though § 506(b) was inapplicable to certain attorney fees, contractual entitlement to attorneys fees was an issue still to be determined).

American rule" applies[12] and DTR must bear its own costs.[13]

IV. CONCLUSION

Because DTR is not entitled to recover attorney's fees under Massachusetts law, those fees are not allowed under § 502(b) or § 506(b) of the Bankruptcy Code. Accordingly, the Debtor's objection to DTR's Claim will be sustained and the Claim will be allowed as a secured claim in the amount of $2,206.53 against the Debtor's 2004 P500 Workhorse. DTR's objection to the Debtors' Chapter 13 plan will also be sustained and the Debtors will be ordered to file an amended plan that includes DTR's Claim within 30 days. An order in conformity with this memorandum will issue forthwith.

DATED: October 15, 2009            By the Court,

                                   [signature]

                                   Henry J. Boroff
                                   United States Bankruptcy Judge

---

[12] "Under the American Rule, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" Travelers, 549 U.S. at 448 (quoting Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975)); see also In re Campbell, 402 B.R. at 461.

[13] This exercise in statutory construction obviates the need for a ruling on the reasonableness of the attorney's fees under § 506(b).